IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| RICHARD WHITE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV-00-B-1096-NW |
| | ) | |
| JEFFREY'S STEEL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**ENTERED**
**JUN 2 8 2001**

This action is before the court on the Motion for Summary Judgment filed by defendant Jeffrey's Steel Company ("Jeffrey's" or "defendant"). Plaintiff Richard White ("White" or "plaintiff") alleges that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") by discriminating against him on the basis of his race with respect to pay and termination. (Amended Compl. at ¶¶ 15-16.)[1] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

---

[1] The court is without a filed stamped copy of plaintiff's Amended Complaint. When referencing plaintiff's Amended Complaint, the court will refer to a copy of the Amended Complaint attached to Defendant Jeffrey's Steel Company's Supplemental Filing to its Motion to Remand filed with this court on February 20, 2001, asking that plaintiff's worker's compensation claims and state law retaliation claim be remanded.

## I. FACTUAL SUMMARY

Defendant hired plaintiff on or about January 12, 1999, (DX 1),[2] as an employee-at-will, (DX 2 at 2). Defendant terminated plaintiff on June 2, 1999, for failure to provide verification of injury or illness after missing three consecutive days of work. (DX 4.) Prior to his termination, plaintiff had been tardy on nine occasions and had missed five days of work, three of which were consecutive. (DX 5.)

Plaintiff allegedly injured his right hand while on the job on March 10, 1999. (Compl. at ¶¶ 3-4.) Plaintiff continued working at both Jeffrey's and at a car wash following his March 10, 1999, injury. (White Depo. at 97-98; White Depo. at 77-78; DX 5.) Plaintiff did not seek medical treatment until March 26, 1999. (Young Dep. at 10.)[3] On March 26, 1999, Dr. John Young ("Young") examined plaintiff. (Young Depo. at 10.) Young never prescribed that plaintiff curtail his work schedule, nor did he impose any restrictions on plaintiff's daily work activities. (Young Depo. at 14.) Plaintiff again saw Young on April 13, 1999, wherein Young advised plaintiff to continue working without any restrictions. (Young Depo. at 15-16.) Plaintiff "on his own" decided not to work on May 24, 25, and 26, 1999. (Young at 27-29; DX 5.) Plaintiff acknowledges that Young never directed that plaintiff refrain from going to work and never gave him any impairment rating or restrictions. (White Depo. at 146.)

---

[2] Defendant filed Notice of Filing Material for Motion for Summary Judgment on January 5, 2001, with attached exhibits. References to this evidence will be cited as "DX" followed by the corresponding exhibit number.

[3] Plaintiff submitted Plaintiff's Response to Defendant's Motion for Summary Judgment, which included the deposition of Richard White ("White Depo.") and the deposition of Dr. John Young ("Young Depo.") along with attached exhibits. References to the attached exhibits will be referenced as "PX" followed by the corresponding exhibit number.

Defendant made an appointment for plaintiff to see Young on May 27, 1999, but plaintiff did not show up for the appointment. (White Depo. at 90-94.) However, plaintiff did show up for work at Jeffrey's on May 27, 1999. (White Depo. at 90-94.) On June 2, 1999, defendant told plaintiff that he needed to get a doctor's excuse for the three consecutive days of work he missed from May 24, 1999, through May 26, 1999, or that his employment would be terminated. (White Depo. at 151-52.)

The employee handbook contains no requirement that an employee who is absent for three consecutive days present a doctor's excuse. The employee handbook states that, "[a]ny employee who is absent for three consecutive days without notifying the company will be documented as having resigned." (DX 3.)[4] However, it is common knowledge among defendant's employees that an employee who misses three consecutive days of work must obtain a doctor's excuse. (DX 9 at 92.) On June 4, 1999, plaintiff attempted to get a retroactive work release from Young, but Young informed plaintiff that he could not and would not write plaintiff such an excuse. (Young Depo. at 27-29.) Young did not believe that plaintiff should have been off work for those days due to his alleged injury. (Young Depo. at 14-16, 31.) After Young refused to provide plaintiff with a doctor's excuse for the days of work he missed, plaintiff did not return to work at Jeffrey's. (White Depo. at 164.)

On June 9, 1999, less than a week after plaintiff was terminated, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against

---

[4] The employee handbook actually states that, "[a]ny employee who is absent for three consecutive days without notifying the company *be* will be documented as having resigned." (PX 1.) (emphasis added.) It is undisputed that plaintiff notified defendant each day that he missed work.

3

defendant. (DX 6.) In his charge of discrimination, plaintiff alleged that he was terminated for his inability to obtain a doctor's excuse for his unexcused absences. (DX 6.) In addition, plaintiff alleged that white workers often had unexcused absences from work and received nothing more that a reprimand, "at least the first time." (DX 6.)

On January 18, 2000, plaintiff filed a Complaint in the Circuit Court of Colbert County, Alabama, alleging that he was unlawfully terminated "solely because the plaintiff had filed or made a claim for worker's compensation benefits." (Compl. at ¶ 8.) On March 27, 2000, plaintiff amended his complaint to further allege that he was discriminated against under Title VII of the Civil Rights Act of 1964 because white employees were not discharged for missing work without a doctor's excuse. (Amended Compl. at ¶ 15.) Plaintiff further alleged that he was discriminated against because black employees did not receive raises comparable to white employees for work performed. (Amended Compl. at ¶ 16.) On February 9, 2000, the court granted defendants Motion to Remand all State Law Claims to the Circuit Court of Colbert County, Alabama.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Plaintiff alleges that defendant discriminated against him on the basis of his race by (1) failing to give him a pay raise, and (2) discharging him for failing to present a doctor's excuse for three consecutive days of missed work. (Amended Compl. at ¶¶ 15-16.)

In any action alleging disparate treatment by an employer, the plaintiff must prove the employer acted with a discriminatory motive. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

Plaintiff has presented no direct evidence to support his claim of disparate treatment race discrimination. Thus, plaintiff must rely on circumstantial evidence to support his claim.

5

Because plaintiff is relying on circumstantial evidence to support his claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. "The facts necessarily will vary in Title VII cases, and the specification [] of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n.13.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58. In satisfying this burden:

> [t]he employer's burden of rebuttal is "exceedingly light." Since the rebuttal burden is one of production only, the employer "need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]."

*Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981)) (alterations in

6

original).

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs,* 106 F.3d at 1528 (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination or retaliation). *Id*. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See Combs*, 106 F.3d at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, plaintiff must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons were pretextual. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471-72 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiff must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder would conclude that those reasons did not actually motivate defendant's decisions. *See Combs*, 106 F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

A.   **Plaintiff's Termination**

In order to establish a prima facie case of discriminatory discharge, plaintiff must demonstrate: (1) that he belongs to a racial minority; (2) that he was subjected to adverse

7

employment action (i.e., termination); (3) that his employer treated similarly situated employees of other races more favorably; and (4) that he was qualified to do the job. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d at 1310, *modified in part on non-relevant grounds*, 151 F.3d 1321 (1998) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

In *Jones*, the Eleventh Circuit emphasized the necessity of showing that similarly situated non-minority employees were treated more favorably. *See Jones*, 1337 F.3d at 1313. The court stated, "[i]t is this showing — and not the demonstration of racial animus alone — that addresses the fundamental issue in a Title VII disparate treatment case: whether the defendant intentionally discriminated against the plaintiff." *Id.* (citations and quotations omitted). Plaintiff has not made this critical and fundamental showing. In his deposition, plaintiff was unable to identify any employee, black or white, who was fired or allowed to continue working if they missed three consecutive days of work without a doctor's excuse. (White Depo. at 134-135, 158.)[5] Because plaintiff has failed to present evidence that a similarly situated white employee was not terminated, plaintiff cannot establish a prima facie case. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

Even assuming that plaintiff established a prima facie case, defendant has established a legitimate, non-discriminatory reason for plaintiff's termination in that it was defendant's policy to terminate employees who were absent for three consecutive days of work and failed to present

---

[5] Plaintiff testified in his deposition:
    Q.    Sorry. Do you know of any other employees at Jeffrey's Steel who missed three days without giving some excuse and were not considered resigned?
    A.    No.
(White Depo. at 134-35.)

8

a doctor's excuse. (*See* DX 9 at 92.) In support of its legitimate non-discriminatory reason defendant presented the following testimony of another Jeffrey's employee, "[a]fter three days, if you're out more than three days, if you're calling in sick, you have to have a doctor's excuse, after three days." (DX 9 at 92.)[6]

Plaintiff has failed to offer any evidence on which a reasonable jury could find defendant's articulated reason for plaintiff's termination to be pretext for illegal race discrimination. Plaintiff's mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden of establishing pretext. *See Coutu v. Martin Cty. Bd. of Cty. Comm'r's*, 47 F.3d 1068, 1073-74 (11th Cir. 1995). Plaintiff has not produced sufficient evidence upon which a reasonable juror could infer that his termination was motivated by consideration of his race. Thus, defendant is entitled to judgment as a matter of law on plaintiff's termination claim.

**B.  Salary Claim**

"Title VII permits an aggrieved employee to seek relief in federal court only where the complainant (1) has filed timely charges of employment discrimination with the EEOC, and

---

[6] Defendant makes two statements in its brief to support its legitimate nondiscriminatory reason: (1) that "[a]side from being contained in the employee handbook, it is common knowledge among the employees of Jeffrey's Steel that an employee who misses three days of work must obtain a doctor's excuse," (Def.'s Brief 3), and (2) that "plaintiff admits that there is an employee workplace policy that three unexcused absences requires a doctor's certificate justifying the absence," (Def.'s Brief at 7). These statements misrepresent the actual evidence offered. As noted earlier, defendant's employee handbook does not state that an employee is required to present a doctor's excuse when an employee is absent from three consecutive days of work. Second, defendant's brief cites to page seventy-one of plaintiff's deposition to support its contention that plaintiff admitted his knowledge of a workplace rule requiring a doctor's excuse for three consecutive missed days of work. However, plaintiff did not admit his knowledge of this policy on page seventy-one of his deposition or anywhere else in the evidence before the court.

(2) has received and acted upon the EEOC's statutory notice of the right to sue." *Williams v. Hager Hinge Co.,* 916 F. Supp. 1163, 1172 (M.D. Ala. 1995). In deciding Title VII cases, "[c]ourts have specifically held [that] the timely filing of an EEOC charge is a prerequisite to a civil action based upon . . . Title VII . . . and a plaintiff who fails to file a timely charge of discrimination is precluded from bringing a civil action because of a failure to exhaust his or her administrative remedies." *Id.* Additionally, "[i]f a complaint raises allegations which are not reasonably related to the underlying charge raised before the EEOC, then the plaintiff is precluded from asserting those allegations in a civil action." *Id.*

In this case, plaintiff filed an employment discrimination complaint on June 9, 1999, with the EEOC because he believed that his termination for missing three consecutive days of work without a doctor's excuse was racially motivated. (DX 6.) Plaintiff never filed a charge with the EEOC alleging that defendant discriminated against him regarding wage increases. Thus, the court finds that plaintiff's claim that defendant discriminated against him regarding his wages is beyond the scope of the discrimination charge filed with the EEOC. Therefore, plaintiff's wage discrimination claim is not properly before the court and defendant's Motion for Summary Judgment as to this claim is due to be granted.

Even if plaintiff's wage discrimination claim was properly before the court plaintiff's claim would fail because plaintiff has failed to establish a prima facie case of wage discrimination. To demonstrate a prima facie case of race discrimination under Title VII for his salary claim, plaintiff must prove that: (1) he is a member of a protected class; and (2) he was paid less than a member of non-protected class was paid for work requiring substantially the same responsibilities. *Blount v. Alabama Cooperative Extension Serv.,* 869 F. Supp. 1543, 1550

10

(M.D. Ala. 1994).

Plaintiff concedes that he cannot identify a white employee with substantially the same responsibilities who received a higher salary. (White Depo. at 156-58, 160-61.) Plaintiff was also unable to identify any employees, black or white, who received wage increases for comparable work performed. (White Depo. at 156-58, 160-61.)[7] Therefore, plaintiff has not established a prima facie case with regard to his Title VII wage claim.

Even if plaintiff could state a prima facie case, defendant has articulated a legitimate nondiscriminatory reason for the disparate pay received by John Pounders ("Pounders"). Pounders had substantially more experience than plaintiff. (Def.'s Brief at 8-9.) Pounders had experience operating the band saw, air tools, power tools, iron press, and supervisory experience. (DX 10.) Plaintiff has produced no evidence upon which a reasonable juror could conclude that this proffered reason is pretext for unlawful discrimination. Therefore, even if plaintiff had included his allegation of discriminatory pay in his EEOC complaint defendant would still be entitled to summary judgment on this claim.

---

[7] Plaintiff submitted the affidavit of, his co-worker, Joe Watson ("Watson") to support his contention that defendant discriminated against him on the basis of his race with respect to his salary. (Amended Compl. at ¶ 16; PX 3.) In his affidavit, Watson states that "[a] worker who learns to use a saw is supposed to get a raise. Richard White learned to use a saw but did not get a raise. John Pounders, who is white, did the same thing and did get a raise. In addition, another black man, Jason, learned to use the saw and did not get a raise while a white man, Scott, did the same and did get a raise." (PX 3.) Watson's affidavit is insufficient to defeat defendant's Motion for Summary Judgment because it is based on inadmissible speculation and conjecture. *Plaisance v. Travelers Ins. Co.,* 880 F. Supp. 798, 804 (N.D. Ga. 1994) ("It should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact.") (citing *Carter v. Miami,* 870 F.2d 578, 585 (11th Cir. 1989); *Ramsey v. Leath,* 706 F.2d 1166, 1170 (11th Cir. 1983)); *see also Palucki v. Sears, Roebuck and Co.,* 879 F.2d 1568, 1572 (7th Cir. 1989) ("A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." (citing FED. R. CIV. P. 56(e)).

## IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 27th day of June, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge